IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

XAVIER CRUZ, a minor, by his      :          CIVIL ACTION
grandmother and legal guardian,   :
Deborah Alvarez, ET AL.        :
                                :
       v.                  :
                                :
CITY OF PHILADELPHIA, ET AL.   :       NO.  07-493

MEMORANDUM

**Padova, J.**                                                     **September 23, 2008**

Plaintiffs Xavier Cruz ("Cruz") and Deborah Alvarez have brought this civil rights action alleging violations of Cruz's civil rights in connection with his February 5, 2005 arrest and subsequent prosecution.  Presently before the Court is Defendants' Motion for Summary Judgment.[1] For the reasons which follow, the Motion is granted in part and denied in part.

I.     FACTUAL BACKGROUND

Cruz was arrested in the early morning hours of February 5, 2005, on charges arising from the home invasion robbery of 4011 Dungan Street in Philadelphia, Pennsylvania.  He was acquitted of all charges by Judge Robert Rebstock following a juvenile court trial.  Plaintiff contends that he was wrongfully arrested, because there was no evidence tying him to the 4011 Dungan Street robbery and because he did not match the description of the robbers that was broadcast to police.  Plaintiff

---

[1]The instant Motion was filed by Defendants the City of Philadelphia, Commissioner Sylvester Johnson, Police Officer Eric Pross, Police Officer Norman Comacho, Police Officer Francis Kober, Police Officer Matthew Hillespie (misspelled as Gillespie by Plaintiffs), Police Officer Christopher Godfrey, Police Officer Hayes, Sergeant Austin Fraser, Sergeant Thurman, Sergeant Henderchot, Captain Hall, Detective John Komornoski, Detective James Perfidio, Detective John Ellis, and Detective George Cruz. Defendants Edward Bonilla, Lucy Hernandez and Alyssa Ruiz were served with the Complaint but have not filed appearances, answered the Complaint, or moved to dismiss.  Defaults were entered against them on the docket at Plaintiffs' request on November 9, 2007.  The term "Defendants," as used in this Motion, consequently refers to the moving Defendants and does not include Bonilla, Hernandez, or Ruiz.

further contends that he should not have been prosecuted for this crime, and incarcerated pending prosecution, because there was evidence that exonerated him.

The factual record shows that, prior to his arrest, Cruz, who was 14 years old, went out for a late night drive with his cousins and friends, Jonathan Sierra, James Quiles, Joshua Torres, and Alexandra Velazquez, starting around 11:00 p.m. on the night of February 4, 2005.  In the matter of Xavier Cruz, Philadelphia County Court of Common Pleas, Family Court Division - Juvenile Court, Petition 01210502, March 20, 2006 N.T. ("In re Cruz, 3/20/06 N.T. ") at 195, 237, 239.[2]  Cruz was wearing grey sweat pants with red stripes on the sides, a hoodie and a doo rag.  Id. at 85, 93, 238.[3] Cruz, Jonathan and Alexandra returned around 3:30 a.m. and parked in the alley behind Jonathan's home.  Id. at 85, 240.  Jonathan stayed in the car while Cruz and Alexandra went inside.  Id.  at 86, 240.  Cruz picked up some food and he and Alexandra went back outside, where the ground was slippery.  Id. at 240.  Cruz, who was holding a plate of food, slipped, dropped his food, and bumped into a car parked in the alley.  Id. at 240-41.  The car was occupied by Jose Torres ("Torres").  Id. at 241.  Cruz walked back towards Jonathan's house but, before he could go inside, Torres hit the right side of Cruz's nose with a gun.  Id. at 242. Cruz was knocked out by the blow.  Id. at 244. After he came to, he was bleeding from the nose.  Id. at 93. Alexandra saw Torres hit Cruz, went inside her cousin's house and got her Aunt, Myina Cruz, and brought her outside.  Id. at 90, 191. Myina Cruz and her husband picked Cruz up and brought him inside their garage and sat him on the couch.  Id. 192, 244.  Around 4:40 a.m. Alexandra went back inside her cousin's house and called

---

[2]Pages 235-250 of the N.T. are the direct examination of Xavier Cruz.

[3]Pages 79-138 of the N.T. are the examination of Alexandra Velazquez; pages 189-205 of the N.T. are the examination of Myina Cruz; pages 138-178 of the N.T. are the examination of Jonathan Sierra; pages 205-211 of the N.T. are the examination of Jennifer Sierra.

911 to report the incident to the police.  Id. at 91.  Alexandra told the police that her cousin "got hit

with a gun and he was on the floor bleeding."  Id.  She went back outside and saw her cousin

Jonathan and Aunt Myina fighting with Jose Torres.  Id. at 91-92.  She ran back inside and called

911 again to tell the police that Torres had come back.  Id. at 92.

There is evidence on the record that a broadcast was made to police concerning Pike Street

at 4:45 a.m.  (Pl. Ex. K at 12.)  At that time, the 911 operator broadcast: "24 District.  1236 Pike,

coming out with a person with a gun.  Hispanic male, light complected.  He's wearing a white

baseball cap, grey coat.  (Repeats) 24 District.  1236 Pike.  Person with a gun.  Hispanic male, light

complected, wearing a white baseball cap, gray coat, in the rear."  (Id. at 12.)  The police and

paramedics arrived a few minutes later.  (Id. at 13.)

The home invasion took place nearby at 4011 Dungan Street at nearly the same time.  The

record shows that, at 4:21 a.m., a 911 call was made from 4011 Dungan Street in Philadelphia.  (Id.

at 2.)  The caller stated that two Hispanic men with a knife had broken into the house.  (Id.)  The

caller thought that one of the robbers had stabbed her father.  (Id. at 2-3.)  At 4:25 a.m., the following

police radio call was broadcast:

> Car stand by; 24th District.  4011 Dungan.  We have a robbery in
> progress; home invasion.  Also report of a stabbing; two Hispanic
> males is all we have.
>
> (Repeated message)
>
> 24th District.  4011 Dungan.  There's a robbery in progress; home
> invasion.  Also report of a stabbing.  Two Hispanic males.  Nothing
> further.

(Id. at 3.)  Police officers responded to both the 4011 Dungan Street home invasion and the incident

in the alley behind 1236 East Pike Street.

3

When police arrived at 4011 Dungan, they reported to the dispatcher that they were at the rear of the house and that the complainant believed that the two men were still inside the house.  (Id.) The police officers then reported to the dispatcher that the two men may have jumped out of the back window of the house and run north.  (Id. at 3-4.)  The police officer also reported that one of the men "supposedly has a beard and all black clothing." (Id. at 4.)  At 4:35 a.m., the operator broadcast that: "[w]e have a founded home invasion.  A report of a gun.  A Hispanic male wearing all black; he has a beard.  Also a white male; we have no flash.  These males were last seen northbound at 4000 Glendale." (Id. at 6.)

Police Officer Eric Pross went to Dungan Street after receiving a radio call for a robbery in progress.  In the matter of Xavier Cruz, Philadelphia County Court of Common Pleas, Family Court Division - Juvenile Court, Petition 01210502, October 18, 2005 N.T. ("In re Cruz, 10/18/05 N.T. ") at 93.  The flash was for two Hispanic males, one with curly hair and dark clothing.  Id. at 98.  When he got to Dungan Street, the robbers were still in the premises.  Id. at 93.  Officer Pross left Dungan Street after 10 to 15 minutes to respond to a radio call for a man beating a juvenile with a gun on Pike Street.  Id. at 91, 98.

Police Officer Clifford Godfrey also responded to the radio call for the home invasion at 4011 Dungan.  Id. at 64.  He joined Officer Pross at the back door of the house.  Id.  After he and Officer Pross had climbed halfway up the steps to the back of the house, they were met by Alicia Ruiz, who told them that the home invaders had left and pointed into the alley.  Id. at 64-65.  Officer Godfrey and Officer Pross cleared both the alley behind Dungan Street and the next alley, but didn't find anyone.  Id. at 65.  They returned to 4011 Dungan Street and heard the radio call for a person "screaming male beat juvenile in the rear alley of . . . 1200 Pike." Id. at 67.  This radio call came no

4

more than ten minutes after Officer Godfrey arrived at Dungan Street.  Id.

Police Officer Matthew Hillespie responded to Alexandra's 911 call from 1236 East Pike Street.  He was around the corner from the Pike Street home when he heard the radio call.  Id. at 148.  Officer Hillespie went to the Pike Street home and spoke with Cruz.  Id.  Cruz was inside the house, wearing a white t-shirt, grey sweatpants and tennis shoes,  sitting on the couch, bleeding from the nose.  Id. at 149-50.  Officer Hillespie also went to Torres's home, where he recovered a .45 caliber handgun.  Id.

When Officer Pross arrived at Pike Street, he saw Cruz, who had a bloody nose.  Id. at 107.  Alexandra was also there and told Officer Pross that Torres hit Cruz with a gun.  Id.  Officer Pross saw a pool of blood in the garage at the Pike Street house.  Id. at 113-14.  Officer Pross also spoke with Jonathan, who said that Torres hit Cruz with a gun.  Id. at 114.  Officer Pross went to Torres's house and saw Torres by the doorway.  Id. at 109, 115.  Officer Pross went back to Myina Cruz's Pike Street home and asked Cruz what happened.  Id. at 116-17.

Cruz states that, when the police came, he went upstairs in his Aunt Myina's house, accompanied by a police officer, to clean his face.  In re Cruz, 3/20/06 N.T. at 245.  After he cleaned off his face, he sat in the living room and the police questioned him.  Id. at 245-46.  Cruz was alone during the questioning, his cousins waited in his aunt's kitchen.  Id. at 94.  The police asked Cruz how he jumped out of the window and where he had been.  Id. at 246.  Cruz, his cousins and his aunt all testified that the police handcuffed him while he was in the living room of the Pike Street house.  Id. at 154, 197, 210, 246.  Cruz's aunt and cousins all testified that they asked police why he was being handcuffed and were told that he was under investigation for a robbery.  Id. at 96, 154, 197, 247.  According to Cruz, his aunt and his cousins, the police officers then brought Cruz, with his

5

hands in handcuffs behind his back and his legs tied, downstairs and outside to the driveway, where they shined a light on him, put him in a police car and drove him away.  Id. at 96, 210-211, 247-48.

Officer Pross testified that, after he spoke with Cruz, he and Police Officer Hayes decided that the details of Cruz's story did not add up and that he and Torres were the perpetrators of the Dungan Street home invasion.  (Pross Dep. at 26.)  Officer Pross then made a radio call to Dungan Street and told Officer Godfrey to bring the complainants from Dungan Street over to Pike Street. (Id.  at 25-27.)  Officer Godfrey drove Lucy Hernandez, Alicia Ruiz and Edward Bonilla from the Dungan Street house to Pike Street in the back of his police car.  In re Cruz, 10/18/05 N.T. at 71, 78-79.  When Office Godfrey got to Pike Street, the police officers took Cruz out of his aunt's house. (Pross Dep. at 27.)  Officer Pross testified at his deposition that Cruz was not handcuffed at that time.  (Id.)  When Officer Godfrey drove up to the spot where Cruz was being held, he stopped his car, got out, lowered the back window, and put a spotlight on Cruz.  In re Cruz, 10/18/05 N.T. at 81.  Officer Godfrey then asked the three complainants "[i]s that him?  Is that the guy that did what you're saying happened?"  Id.  Cruz was standing by himself at the time.  Id.  None of the complainants got out of the car before they identified Cruz.  Id.

Officer Pross has testified inconsistently regarding handcuffing Cruz.   He testified during Cruz's Juvenile Court proceedings that he personally handcuffed Cruz after Cruz was positively identified by the Dungan Street complainants.  Id. at 119.  He testified, during his deposition in this case, that Office Godfrey put Xavier in handcuffs after the complainants positively identified Cruz and Torres.  (Pross Dep. at 29.)

Detective John Komorowski testified at his deposition that he was assigned to investigate the Dungan Street home invasion.  (Komorowski Dep. at 15.)  There were approximately four police

officers there when he arrived.  (Id. at 16.)  The home invasion occurred on an icy, cold February night.  (Id. at 18.)  Detective Komorowski was at Dungan Street for approximately 15 minutes before he left to go to Pike Street.  (Id. at 21.)  Komorowski went to Pike Street because he had received information that officers at that location had stopped two individuals who fit the description of the men who had broken into the Dungan Street home.  (Id. at 22.)  He was present when the complainants identified Xavier and Torres as the men who broke into the Dungan Street home.  (Id. at 23.)  Komorowski does not remember if Xavier was handcuffed at the time he was identified.  (Id. at 25.)

The Complaint asserts one claim against all individual Defendants, both individually and in their official capacities, pursuant to 42 U.S.C. § 1983, for violation of Cruz's Fourth and Fourteenth Amendment rights to be free from unreasonable seizure, and to equal protection under the law (Count I).  The Complaint asserts three claims pursuant to 42 U.S.C. § 1981, for violation of Cruz's Fourteenth Amendment right to equal protection and to be free from discrimination based on his race and ethnicity: one against all of the individual Defendants in their individual and official capacities (Count II); one against the City of Philadelphia, the Philadelphia Police Department, and the Philadelphia Police Commissioner (Count VI); and one against the City of Philadelphia (Count VII).  The Complaint also alleges a claim against all Individual Defendants, individually and in their official capacities, pursuant to 42 U.S.C. § 1985, for conspiring to violate Cruz's Fourteenth Amendment rights to equal protection and to be free from invidious discrimination on the basis of his race and ethnicity (Count III).  The Complaint further alleges two claims against the City of Philadelphia pursuant to 42 U.S.C. § 1983 for developing and maintaining customs and policies exhibiting deliberate indifference to the constitutional rights of City residents (Count IV and Count

V).[4]  The Complaint also asserts a Pennsylvania common law claim against certain of the individual Defendants for false arrest and false imprisonment (Count VIII).  The complaint further asserts Pennsylvania common law claims against all Defendants for malicious prosecution and negligent and intentional infliction of emotional distress (Counts IX and X).  Finally, the Complaint asserts a claim against all Defendants for unlawful seizure in violation of the Constitution of the Commonwealth of Pennsylvania (Count XI).

II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  After the moving party has met its initial burden, the adverse party's response must, "by affidavits or

---

[4]Count IV is also asserted against The Philadelphia Police Department and the Police Commissioner.

otherwise as provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." <u>Boykins v. Lucent Tech., Inc.</u>, 78 F. Supp. 2d 402, 407 (E.D. Pa. 2000) (citations omitted), <u>aff'd</u> 29 Fed. Appx. 100 (3rd Cir. 2002). Indeed, evidence introduced to defeat or support a motion for summary judgment must be capable of being admissible at trial. <u>Callahan v. A.E.V., Inc.</u>, 182 F.3d 237, 252 n.11 (3d Cir. 1999) (citing <u>Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.</u>, 998 F.2d 1224, 1234 n.9 (3d Cir. 1993)).

III.    DISCUSSION

A.    <u>The Section 1983 Claim Asserted Against the Individual Defendants</u>

Count I of the Complaint asserts a claim against all of the individual Defendants pursuant to 42 U.S.C. § 1983 for violation of Cruz's rights under the Fourth and Fourteenth Amendments to be free from unreasonable seizure of his person and equal protection under the law. To establish a claim under § 1983, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995) (quotation omitted). The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend IV. Defendants argue that they are entitled to the entry of summary judgment in their favor on Count I

because no reasonable jury could find that they did not have probable cause for Cruz's arrest.

"[T]he proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). "'Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" Johnson v. Sch. Dist. of Philadelphia, Civ. A. No. 06-4826, 2008 WL 3927381, at *7 (E.D. Pa. Aug. 21, 2008) (quoting Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000)). "'The validity of an arrest is determined by the law of the state where the arrest occurred.'" Id. at *7 n.5 (quoting United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002)). "The probable cause determination 'does not turn on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer reasonably believed that the arrestee had committed the crime.'" Id. (quoting Radich v. Goode, 886 F.2d 1391, 1397 (3d Cir. 1989)).

Defendants maintain that no reasonable jury could determine that probable cause did not exist at the time of Cruz's arrest because he had been positively identified as one of two individuals who broke into 4011 Dungan Street by the three victims of that home invasion. There is, however, evidence in the record upon which the jury could find that Cruz's arrest occurred prior to his identification by the three victims of the home invasion. An arrest has been defined as:

> "the taking, seizing, or detaining of the person of another, (1) by touching or putting hands on the arrestee; (2) or by any act that indicates an intention to take the arrestee into custody and that subjects the arrestee to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested.

> There can be no arrest where there is no restraint and the restraint must be under real or pretended legal authority. However, the detention of a person need not be accompanied by formal words of arrest or station house booking in order to constitute 'arrest.' Whether the restraint or detainment was sufficient to rise to the level of arrest will in many cases turn on the length of the detention, and the degree of restraint. The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associate with formal arrest."

Bristow v. Clevenger, 80 F. Supp. 2d 421, 436 (M.D. Pa. 2000) (quoting 5 Am. Jur. 2d Arrest § 2 (1995)); see also Commonwealth v. Hannon, 837 A.2d 551, 554 (Pa. Super. Ct. 2003) (stating that "an arrest is 'any act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest'" (quoting Commonwealth v. Lovette, 450 A.2d 975, 978 (Pa. 1982))).

There is considerable evidence on the record before us that Cruz was handcuffed, and thereby seized by Officer Pross, before he was taken out of his aunt's house and into the alley where he was identified by the three victims of the home invasion.  Cruz, his cousins Jonathan and Jennifer Sierra, and his aunt Myina Cruz, all testified during Cruz's trial that he was handcuffed by police while he was still in his aunt's living room.  In re Cruz, 3/20/06 N.T. at 154, 197, 210, 246.  "There is no per se rule that pointing guns at people, or handcuffing them, constitutes an arrest."  Baker v. Monroe Twp., 50 F.3d 1186, 1193 (3d Cir. 1995) (citations omitted).  However, the use of handcuffs in a non-arrest situation must be justified by the circumstances, such as where the police officers feel threatened by the suspects or fear that they will escape.  Id.  Here, there is no evidence that the police officers involved felt threatened by Cruz or feared that he would escape if he was not handcuffed. We find, accordingly, that there is evidence in the record upon which a reasonable jury could find that Cruz was arrested before he was identified by the 4011 Dungan Street complainants.

11

The only evidence Defendants point to as supporting the existence of probable cause for Cruz's arrest was his identification by the 4011 Dungan Street complainants.  Consequently, we conclude that there is evidence on the record upon which a jury could find that Cruz was arrested before the police officers had probable cause for his arrest.  We hold, therefore, that there is a genuine issue for trial regarding whether the police had probable cause for Cruz's arrest at the time he was arrested.  Defendants' Motion for Summary Judgment is, therefore, denied as to Count I of the Complaint.

      B.     <u>The Section 1981 Claims</u>

Counts II, VI and VII are all claims for monetary damages brought pursuant to 42 U.S.C. § 1981 against the individual Defendants (Count II), the City of Philadelphia, Philadelphia Police Department and Sylvester Johnson (the Police Commissioner) (Count VI); and the City of Philadelphia (Count VII).  Counts II, VI and VII all claim that Cruz was discriminated against based upon his race and ethnicity in violation of Section 1981.  Defendants have moved for summary judgment as to Counts II, VI and VII on the ground that a plaintiff may only seek damages for violations of 42 U.S.C. § 1981 by state actors through a cause of action for damages brought pursuant to 42 U.S.C. § 1983. Defendants are correct.  Accordingly, we treat Plaintiffs' Section 1981 claims as having merged into his Section 1983 claims.  <u>See</u> <u>Little v. City of Philadelphia</u>, Civ. A. No. 07-5361, 2008 WL 2704579, at *1 n.1 (E.D. Pa. July 3, 2008) (determining that, because Section 1981 does not provide a cause of action for monetary damages against state actors, Little's Section 1981 claims would be treated as merged with his 1983 claims); <u>see also</u> <u>McGovern v. City of Philadelphia</u>, Civ. A. No. 07-3817,  2008 WL 269498, at *2-*3 (E.D. Pa. Jan. 30, 2008) (agreeing "that § 1983 alone provides a remedy against state actors who have committed constitutional

wrongs"); <u>Oaks v. City of Philadelphia</u>, 59 Fed. Appx. 502, 503 (3d Cir. 2003) (noting that the Supreme Court "has ruled 'that the express action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.'" (quoting <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 735 (1989))). Defendants Motion is, consequently, granted as to Counts II, VI and VII.[5]

      C.      Section 1983 Claims Asserted Against the City of Philadelphia and Philadelphia Police Department

Counts IV and V assert claims against the City of Philadelphia pursuant to 42 U.S.C. § 1983 for developing and maintaining customs and policies exhibiting deliberate indifference to the constitutional rights of city residents.  Count IV asserts that the City of Philadelphia, Philadelphia Police Department, and Philadelphia Police Commissioner have policies and/or customs of:  failing to investigate citizen complaints of police misconduct regarding criminal identification, arrests and investigations (Compl. ¶ 82); failing to train and/or properly supervise police and detectives (<u>Id.</u> ¶ 83); of ignoring exculpatory evidence (<u>Id.</u> ¶ 84); tolerating racially or ethnically discriminatory motives for making arrests (<u>Id.</u> ¶ 85); and utilizing inadequate hiring standards and procedures (<u>Id.</u> ¶ 86); resulting in the violation of Cruz's constitutional rights.

A municipality can only be liable under § 1983 when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 694

---

[5]Plaintiffs concede that they may not assert claims based upon 42 U.S.C. § 1981 against Defendants and that Defendants are entitled to the entry of summary judgment in their favor as to Counts II and VII.  (Pls. Mem. at 22.)

(1978).  A municipal policy is defined as "'a statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers.'"  Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir. 1991) (quoting Monell, 436 U.S. at 691) (alterations in Simmons).  A municipal custom consists of "'such practices of state officials . . . [as are] so permanent and well settled as to constitute a custom or usage with the force of law.'"   Simmons, 947 F.2d at 1059 (quoting Monell, 436 U.S. at 691) (alterations in Simmons).

Once a policy or custom is identified, a plaintiff must establish that the municipality maintained the policy or custom with "deliberate indifference" to the constitutional deprivations that the policy or custom caused.  City of Canton v. Harris, 489 U.S. 378, 389  (1989); see also Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996) (stating that the "deliberate indifference" standard, though originally created in the context of a failure to train claim, has been applied to other claims of municipal liability based on policy or custom).  Deliberate indifference may be established by evidence that policymakers were aware of the constitutional deprivations and of the alternatives for preventing them, "but either deliberately choose not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction in this regard."  Simmons, 947 F.2d at 1064 (footnote omitted); see also Bd. of County Comm'rs v. Brown, 520 U.S. 397, 407 (1997) ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action -- the 'deliberate indifference' -- necessary to trigger municipal liability.") (citing City of Canton, 489 U.S. at 390 n.10).  In addition, a plaintiff must also prove that the municipal policy or custom was the proximate cause of the injuries suffered.  Beck, 89 F.3d at

972 n.6.  The United States Court of Appeals for the Third Circuit has explained that "[a] sufficiently close causal link between . . . a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom."  Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990) (quotation omitted).

Defendants argue that they are entitled to summary judgment on Counts IV and V because Plaintiffs have submitted no evidence in support of these clams.  We agree.  The record contains no evidence of municipal policies or customs of failing to investigate citizen complaints of police misconduct regarding criminal identification, arrests and investigations; failing to train and/or properly supervise police and detectives; ignoring exculpatory evidence; tolerating racially or ethnically discriminatory motives for making arrests; or utilizing inadequate hiring standards and procedures.  In fact, the record contains no evidence with respect to any arrest or investigation except for the investigation into the 4011 Dungan Street home invasion and the arrests of Cruz and Torres; no evidence of any policies of the City of Philadelphia or the Police Department; and no evidence regarding the hiring, training or supervision of Philadelphia police officers or detectives.  Consequently, we find that Plaintiffs have failed to satisfy their burden of coming forward with evidence setting out specific facts showing a genuine issue for trial with respect to their Monell claims.  Defendants' Motion is, accordingly, granted as to Counts IV and V of the Complaint.

      D.      Section 1985 Conspiracy Claim

Count III alleges that the individual Defendants conspired to deprive Cruz of his Fourteenth Amendment rights to equal protection and to freedom from invidious discrimination on the basis of race and ethnicity in violation of 42 U.S.C. § 1985.  Section 1985(3) provides a private right of

action for an individual who has been injured by a conspiracy of two or more persons to deprive him, or a class of persons, of "the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). In order to succeed on a claim brought pursuant to Section 1985(3), Plaintiffs must establish the following elements:

> (1) a conspiracy; (2) for the purpose of depriving any person or class of person of equal protection of the laws or equal privileges and immunities; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Sutton v. West Chester Area Sch. Dist., Civ. A. No. 03-3061, 2004 WL 999144, at *17 (E.D. Pa. May 5, 2004) (citing Kelleher v. City of Reading, Civ. A. No. 01-3386, 2001 WL 1132401, at *2 (E.D. Pa. Sept. 24, 2001)). "To satisfy the second element, Plaintiff must allege that the Defendants were motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Id. (citing Kelleher, 2001 WL 1132401, at *2).

Defendants argue that they are entitled to the entry of summary judgment in their favor on Count III because Plaintiffs have submitted no evidence in support of this claim. We agree. The record contains no evidence of a conspiracy entered into by any of the individual Defendants. The record is also devoid of any evidence that any of the individual Defendants acted out of racial or ethnic animus. We find, accordingly, that Plaintiffs have failed to satisfy their burden of coming forward with evidence setting out specific facts showing a genuine issue for trial with respect to their Section 1985 conspiracy claim. Defendants' Motion is, accordingly, granted as to Count III of the Complaint.[6]

---

[6]Plaintiffs concede that they may not assert claims based upon 42 U.S.C. § 1985 against Defendants. (Pls. Mem. at 23.)

16

E.      State Common Law Claims Against the City of Philadelphia and Police Department

Counts IX and X assert claims against all Defendants, including the City of Philadelphia and the Philadelphia Police Department, for malicious prosecution, negligent infliction of emotional distress, and intentional infliction of emotional distress.  Count XII asserts a claim for prosecutorial misconduct against the City of Philadelphia.  Defendants argue that summary judgment should be entered in favor of the City of Philadelphia and the Police Department with respect to these claims because these claims are barred by the Political Subdivision Tort Claims Act (the "Tort Claims Act"), 42 Pa. Cons. Stat. Ann. § 8541, *et seq.*  The Tort Claims Act states that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat.  Ann. § 8541.  The Tort Claims Act states eight exceptions for which agencies may be held liable for certain acts. The exceptions are: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls or street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) fire, custody or control of animals.  Id. at § 8542(b).  The Pennsylvania Supreme Court has made it clear that the Tort Claims Act is "a legislatively imposed shield of government immunity against any damages on account of any injury to any person or property by any act of a local agency or employees thereof or any other person, except as provided in the statute itself." Kiley v. City of Philadelphia, 645 A.2d 184, 185 (Pa. 1994) (citation omitted).  As a result "of the clear intent to insulate government from exposure to tort liability for any of its acts, exceptions carved out by the Legislature from this general rule are strictly construed."  Id. at 185-86 (citations omitted).  Since the state law claims alleged by the Plaintiff are not encompassed within the eight exceptions that would rescind immunity, the City of Philadelphia and the Philadelphia Police

17

Department are immune from these claims. We find, accordingly, that the City of Philadelphia and the Philadelphia Police Department are entitled to the entry of judgment as a matter of law in their favor and against Plaintiffs as to Counts IX and X. Additionally, the City of Philadelphia is entitled to the entry of judgment as a matter of law in its favor and against Plaintiffs as to Count XII.

      F.      The State Common Law Claims Against the Individual Defendants

In addition to the malicious prosecution claim (Count IX) and the negligent and intentional infliction of emotional distress claim (Count X) asserted against all of the individual Defendants, Plaintiffs also assert a common law claim for false arrest and false imprisonment against Police Officers Pross, Comacho, Kober, Hillespie, Godfrey, and Hayes, Police Sergeants Fraser and Thurman, and Detective Komorowski (Count VIII). Defendants argue that they are entitled to summary judgment with respect to these claims because they are barred by the Tort Claims Act. The Tort Claims Act restricts the liability of employees of local agencies to the same extent that it restricts the liability of the local agencies that employ them. See 42 Pa. Cons. Stat. Ann. § 8545 ("An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter."). However, in addition to the eight categories of exceptions to the general grant of immunity found in 42 Pa. Cons. Stat. Ann. § 8542, 42 Pa. Cons. Stat. Ann. § 8550 provides an exception for certain intentional torts committed by local agency employees. See 42 Pa. Cons. Stat. Ann. § 8550 (stating that the provisions of Section 8545 do not apply to actions for damages "in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct . . . ."). False arrest and false

18

imprisonment, malicious prosecution, and intentional infliction of emotional distress, "are intentional torts amounting to 'actual malice' or 'willful misconduct' that fall within the ambit of Section 8550." Gines v. Bailey, Civ. A. No. 92-4170, 1992 WL 394512, at *5 (E.D. Pa. Dec. 29, 1992). Consequently, the Tort Claims Act does not bar these claims against the individual Defendants and we must examine the merits of these claims.

### 1.     The false arrest and false imprisonment claims

"'In Pennsylvania, a false arrest is defined as 1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so . . . .  The Pennsylvania and federal standards for the existence of probable cause are the same.'" Maiale v. Youse, Civ. A. No. 03-5450, 2004 WL 1925004, at *12 (E.D. Pa. Aug. 27, 2004) (quoting Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 869 (E.D. Pa. 2000).  "'The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention.'" Id. (quoting Russoli, 126 F. Supp. 2d at 869).  "False arrest and false imprisonment are thus nearly identical claims, and are generally analyzed together." Id. (citing Olender v. Twp. of Bensalem, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999), aff'd 202 F.3d 254 (3rd Cir. 1999)).  We have found that there is a genuine issue of material fact for trial regarding whether the police had probable cause for Cruz's arrest at the time he was arrested.  Defendants' Motion for Summary Judgment is, consequently, denied as to Plaintiffs' state common law claims for false arrest and false imprisonment in Count VIII.

### 2.     Malicious prosecution

Count IX of the Complaint asserts a claim for malicious prosecution against all of the individual Defendants.  The elements of a common law claim for malicious prosecution are "'(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor;

(3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice.'" Brockington v. City of Philadelphia, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005) (quoting Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000)).  Defendants maintain that they are entitled to the entry of summary judgment in their favor on this claim because none of them initiated a criminal proceeding against Cruz.

"In most circumstances, a plaintiff can not proceed against a police officer for a claim of malicious prosecution because a prosecutor, not a police officer, 'initiates' criminal proceedings against an individual.'" Merrero v. Micewski, Civ. A. No. 96-8534, 1998 WL 414724, at *6 (E.D. Pa. July 22, 1998) (citing Albright v. Oliver, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J. concurring)).  "Although a prosecutor may initiate criminal proceedings based on information received from a police officer, the prosecutor does so only after independently reviewing the information and exercising his or her discretion to initiate such proceedings." Id. (citations omitted). Police officers may, however, be liable for malicious prosecution where the plaintiff can establish that the police officers exerted pressure or influence on the prosecutor to initiate proceedings or made knowing misstatements to the prosecutor.  Schmoltz v. County of Berks, Civ. A. No. 99-1069, 2000 WL 62600, at *6 (E.D. Pa. Jan. 14, 2000) (citations omitted); see also Brockington, 354 F. Supp. 2d at 569 ("Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, '[a]n officer may, however, be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion.'"  (quoting Gatter v. Zappile, 67 F. Supp. 2d 515, 521 (E.D. Pa. 1999), aff'd 225 F.3d 648 (3rd Cir. 2000)); Merrero, 1998 WL 414724, at *6 ("A police officer may only be held to have 'initiated' a criminal proceeding if he knowingly provided

20

false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion."  (citing <u>Reed v. City of Chicago</u>, 77 F.3d 1049 1054 (7th Cir. 1996) and <u>Torres v. McLaughlin</u>, 966 F. Supp. 1353, 1365 (E.D. Pa. 1997), <u>rev'd on other grounds</u> 163 F. 3d 169 (3d Cir. 1998))).

There is no evidence on the record of this Motion that any of the police officers who were involved in Cruz's arrest or in the investigation of the Dungan Street home invasion lied to the prosecutors who initiated the proceedings against Cruz.  The record is also devoid of evidence that any of the individual Defendants influenced the prosecutors to initiate proceedings against Cruz or otherwise interfered with the prosecutors' informed discretion.  We find, accordingly, that there are no genuine issues of fact for trial with respect to Plaintiffs' state common law claim of malicious prosecution.  Defendants' Motion for Summary Judgment is, consequently, granted as to Plaintiffs' state common law claims for malicious prosecution in Count IX.

3.    <u>Negligent and Intentional Infliction of Emotional Distress</u>

Count X of the Complaint asserts claims for negligent and intentional infliction of emotional distress against all of the individual Defendants.  We find that Plaintiffs' claim for negligent infliction of emotional distress against the individual Defendants is barred by the Tort Claims Act. "The allegation of negligence inherent in a claim for negligent infliction of emotional distress contradicts the willful misconduct required to defeat the state's grant of immunity to its officials or subdivisions."  <u>Dashner v. Riedy</u>, Civ. A. No. 99-02124, 2004 WL 203193, at *8  (E.D. Pa. Jan. 28, 2004) (citing 42 Pa. Cons. Stat. Ann. § 8550 and <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 214 (3d Cir. 2001)).

Defendants also argue that they are entitled to the entry of summary judgment in their favor

on Plaintiffs' claim for intentional infliction of emotional distress because Plaintiff has failed to submit any competent medical evidence supporting this claim.   In Pennsylvania, a claim of intentional infliction of emotional distress must be supported by "competent medical evidence." Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987); see also Bougher v. Univ. of Pittsburgh   882 F.2d 74, 80 (3d Cir. 1989) ("Pennsylvania requires that competent medical evidence support a claim of alleged intentional infliction of emotional distress."  (citing Kazatsky, 527 A.2d at 995)).  Although Plaintiffs state, in their response to the Motion for Summary Judgment, that Cruz has received medical treatment for emotional distress suffered as a result of Defendants' conduct, they have wholly failed to submit any such evidence to the Court.  It is Plaintiffs' burden to submit such evidence.  See Fed. R. Civ. P. 56(e)(2).  Plaintiffs' "conclusory allegations . . . are insufficient to raise genuine issues of material fact."  Boykins, 78 F. Supp. 2d at 407.  We find, therefore, that Plaintiffs have failed to rebut Defendants' argument by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which [Plaintiffs] will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Defendants' Motion for Summary Judgment is, accordingly, granted as to Plaintiffs claims for negligent and intentional emotional distress in Count X.

G.     State Constitutional Claim

Count XI of the Complaint asserts a claim for monetary damages against all Defendants for unreasonable seizure in violation of the Pennsylvania Constitution.  Pennsylvania does not recognize a private right of action for monetary damages for violation of the Pennsylvania Constitution.  See R.H.S. v. Allegheny County Dep't of Human Serv., 936 A.2d 1218, 1226 (Pa. Commw. Ct. 2007), appeal denied sub nom. Steinmetz v. Allegheny County Dep't of Human Serv., --- A.2d ---, 2008

WL 2755469 (Pa. Jul. 16, 2008), (citing <u>Jones v. City of Philadelphia</u>, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006), <u>appeal denied</u> 909 A.2d 1291 (Pa. 2006)).  We find, accordingly, that Defendants are entitled to judgment as a matter of law on Count XI of the Complaint.  Defendants' Motion for Summary Judgment is, therefore, granted as to Plaintiffs' claim for violation of the Pennsylvania Constitution in Count XI.

IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion is granted as to Counts II, III, IV, V, VI, VII, IX, X, XI and XII of the Complaint.  Defendants' Motion is denied as to Counts I and VIII.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| XAVIER CRUZ, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, ET AL. | : | NO.  07-493 |

**O R D E R**

_____**AND NOW,** this 23rd  day of September, 2008, upon consideration of Defendants' Motion

for  Summary  Judgment  (Docket  No.  37)  and  Plaintiffs'  response  thereto,  **IT  IS  HEREBY**

**ORDERED** that said Motion is **GRANTED IN PART AND DENIED IN PART** as follows:

    1.      Defendants' Motion is **GRANTED** as to Counts II, III, IV, V, VI, VII, IX, X, XI and

           XII of the Complaint.

    2.      **JUDGEMENT** is entered in favor of Defendants and against Plaintiffs as to Counts

           II, III, IV, V, VI, VII, IX, X, XI and XII of the Complaint.

    3.      The City of Philadelphia and the Philadelphia Police Department are **DISMISSED**

           as Defendants in this case.

    4.      Defendants' Motion is **DENIED** as to Counts I and VIII of the Complaint.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.